UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICA'S HEALTH CHOICE MEDICAL ) <br> PLANS, INC., ) <br>       Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES DEPARTMENT OF HEALTH ) <br> AND HUMAN SERVICES, CENTERS FOR ) <br> MEDICARE & MEDICAID SERVICES ) <br>       Defendant. ) <br> ) | Civil Action No.:  06-2064 (RWR) |

**DEFENDANT'S EXPEDITED MOTION TO CLARIFY AND/OR RECONSIDER THE
COURT'S DECEMBER 21, 2006 ORDER FOR PRELIMINARY INJUNCTION[1]**

On December 14, 2006, the Court held a hearing on plaintiff's motion for a temporary restraining order ("TRO") and motion for a preliminary injunction ("PI"). Plaintiff's motions for a TRO and PI (and plaintiff's underlying Complaint) requested only that the Court enjoin defendant from "terminating AHC's contract, sending the notice of the December 31, 2006 termination to AHC's beneficiaries, or publishing any notice of AHC's termination on its website. See Pl. Application for TRO at 1; Pl. Mot. For PI at 1; see also Compl. (attacking merits of Administrator's November 30, 2006 decision to terminate plaintiff's Medicare Advantage ("MA") contract, but failing to address issue of intermediate sanctions). Although plaintiff's motions for a TRO and PI did not request that the Court enjoin defendant from imposing intermediate enrollment and marketing sanctions on AHC, and the Court in its oral ruling did not address this issue, nonetheless the Court's December 21, 2006 Order states that defendant "shall take no action . . . to impose intermediate enrollment and marketing sanctions

---

[1] Defendant requests that the Court expedite its review of this motion because the open enrollment period for beneficiaries ends December 31, 2006.

on AHC's current contract with CMS based on the administrative proceedings and determinations that culminated in the agency Administrator's November 30, 2006 decision." Defendant hereby moves for clarification, and if necessary, reconsideration of the Court's December 21, 2006 Order and issuance of a new order.[2]  As interpreted by plaintiff, the Order <u>alters</u> the status quo and provides relief not sought in plaintiff's motions.  Plaintiff has informed undersigned counsel that it opposes the instant motion.

With respect to clarification of the Court's existing Order, defendant's position is that termination of an MA contract is premised on independent statutory and regulatory authority from the procedures governing the imposition of intermediate sanctions.  The Secretary's authority to impose intermediate sanctions derives directly from the statute and is completely unaffected by the contract period.  Thus, any contract language to the contrary cannot override the plain and unambiguous language in the statute.  As such, defendant moves the Court to clarify that the December 21, 2006 Order does not apply to defendant's current imposition of intermediate sanctions on the plaintiff.

If the Court's December 21, 2006 Order is construed to apply to defendant's current intermediate sanctions, defendant moves the Court to reconsider its Order.  Reconsideration is particularly warranted in this case because defendant did not have an opportunity to brief the issue of whether plaintiff is entitled to injunctive relief respecting the imposition of intermediate

---

[2] At the conclusion of the hearing, the Court requested that the parties submit a joint order reflecting the Court's oral decision.  Plaintiff and defendant were unable to agree on language for the order because plaintiff demanded language respecting the enjoinment of intermediate sanctions.  Defendant objected to this language as the issue of intermediate sanctions poses different legal and equitable questions than those presented by the immediate termination of plaintiff's MA contract, and defendant had not had an opportunity to brief the issue of intermediate sanctions.

sanctions since plaintiff did not raise this issue to the Court.

The Court should grant the instant motion because plaintiff is not entitled to injunctive relief that it failed to request in its motions for a TRO and PI. In addition, even if plaintiff had requested that the Court enjoin defendant from imposing intermediate enrollment and marketing sanctions on AHC, AHC is not entitled to such relief. Neither the statute nor the regulations provides for review of the agency's imposition of intermediate sanctions. Instead, defendant is entitled to maintain intermediate sanctions until the managed care organization has demonstrated that it has corrected the underlying basis for the sanction. Moreover, even if review of intermediate sanctions were proper, AHC has failed to demonstrate irreparable harm stemming from the imposition of intermediate sanctions which have been in effect since July of 2005 (and briefly stayed from June-November 2006), and a preliminary injunction is therefore unwarranted.

## DISCUSSION

**I.    Plaintiff is not Entitled to Injunctive Relief that it Failed to Request**

Plaintiff did not request relief in the form of an injunction prohibiting defendant from imposing intermediate enrollment and marketing sanctions on AHC. See Pl. Application for TRO at 1; Pl. Mot. For PI at 1; see also Compl. (attacking merits of Administrator's November 30, 2006 decision to terminate plaintiff's MA contract, but failing to address issue of intermediate sanctions). This issue was therefore not briefed by the parties. Nor did the Court address the issue in its oral decision on December 14, 2006. The Court's December 21, 2006 Order, as interpreted by the plaintiff, improperly grants plaintiff relief that plaintiff failed to

request in its papers, and to which it is not entitled on either legal or equitable grounds.[3]  The Court should therefore clarify and/or reconsider the December 21, 2006 Order and delete any reference to intermediate sanctions.  See United States v. Microsoft Corp., 147 F.3d 935, 943 (D.C. Cir. 1998) (holding that government's request for contempt citation against Microsoft for violating consent decree did not provide adequate notice of preliminary injunction for purposes of Rule 65(a)(1) because "[t]he contempt petition did not alert Microsoft to contest these factors" (the four preliminary injunction factors)); see also Beyond Pesticides/Nat'l Coal. Against the Misuse of Pesticides v. Whitman, 294 F. Supp. 2d 1, 2 n2 (D.D.C. 2003) (declining to consider unreasonable delay claim under Administrative Procedure Act ("APA") as basis for preliminary injunction because motion for preliminary injunction did not clearly state APA as basis for relief; even though plaintiffs referred to APA in their complaint, "plaintiffs' motion for preliminary injunction was narrower in scope tha[n] their Complaint.").

**II.    Under the Statute and Regulations, Defendant May Impose and Maintain Intermediate Sanctions Until Plaintiff has Met Conditions for Their Removal.**

Even if plaintiff had requested that the Court enjoin defendant from imposing intermediate sanctions, plaintiff is not entitled to such relief.  Plaintiff's position is that the intermediate enrollment and marketing sanctions imposed by CMS stem from the contract terminated by the Administrator's November 30, 2006 decision, and because the Court has held

---

[3]  The Court's December 21, 2006 Order also grants the relief "nunc pro tunc" to December 14, 2006.  Defendant had no notice respecting the lifting of intermediate sanctions on December 14, 2006, as neither party raised the issue, and the Court did not discuss the issue in its oral decision.  Defendant cannot be expected to comply "nunc pro tunc" with an Order as to which it had no notice.  Granny Goose Foods, Inc. v. Bhd. of Teamsters Local No. 70, 415 U.S. 423, 432 n.7 (1974) (noting that the notice required by Rule 65(a) before a preliminary injunction can issue implies a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition).

that plaintiff likely entered into a new contract on November 22, 2005, that was not the subject of the Administrator's November 30, 2006 decision, any marketing and enrollment sanctions imposed by CMS prior to November 22, 2006, are also null and void.  AHC is incorrect.  In contrast to the MA <u>contract</u> termination procedures and review process found in the statute and regulations, 42 U.S.C. § 1395w-27(h), no such review process exists for the imposition of intermediate sanctions against an MAO.  <u>See</u> <u>id.</u> at 1395w-27(g)(3)(C).

Instead, the statute provides that intermediate sanctions may be imposed "*until the Secretary is satisfied that the deficiency that is the basis for the determination has been corrected and is not likely to recur*."  <u>Id.</u> (emphasis added); <u>see</u> <u>also</u> 42 C.F.R. § 422.752.  Similarly, the regulations provide that the "sanction remains in effect until CMS notifies the MA organization that CMS is satisfied that the basis for imposing the sanction has been corrected and is not likely to recur."  42 C.F.R. § 422.756(f)(3); <u>see</u> <u>also</u> 42 C.F.R. § 422.750 ("the enrollment, payment, and marketing sanctions continue in effect until CMS is satisfied that the deficiency on which the determination was based has been corrected and is not likely to recur").  In AHC's case, the agency has made no such determination, and continued intermediate sanctions are therefore proper.  In short, intermediate sanctions imposed by CMS remain in place, regardless of whether there is a contract renewal, or a "new" contract, as AHC contends.

Nor does the statute provide for appeal of intermediate sanction determinations.  Unlike a termination decision, which may only be implemented after the Secretary has given the Medicare Advantage Organization ("MAO") "reasonable notice and opportunity for hearing (including the right to appeal an initial decision) before terminating the contract," 42 U.S.C. § 1395w-27(h)(B), an MAO has no such right to appeal the imposition of intermediate sanctions.  42 C.F.R. §

422.756 (providing only for informal reconsideration of sanctions); see also 42 C.F.R. § 422.641 (noting review of certain contract determinations, but not providing for review of intermediate sanctions). Therefore, following the agency's October 18, 2006 reconsideration decision upholding the imposition of intermediate sanctions, A.R. 2427-28, AHC was not entitled to further review.[4] Instead, following the agency's decision, the agency is entitled to maintain sanctions "until the Secretary is satisfied that the deficiency that is the basis for the determination has been corrected and is not likely to recur." 42 U.S.C. § 1395w-27(g)(3)(C). Defendant has yet to be satisfied that AHC's deficiencies have been corrected, and therefore has

---

[4] Given the lack of review provided for in the administrative process, and in contrast to the multi-layered review of MA contract terminations provided for by Congress, arguably the Court lacks jurisdiction under the APA to review the agency's imposition of intermediate sanctions. If Congress had intended review of intermediate sanctions to be available in federal court it would have so provided. Moreover, even if the October 18, 2005 decision upholding intermediate sanctions were viewed as a final agency decision under the APA, plaintiff should have appealed that decision at that time. By waiting over a year, plaintiff has fatally undermined its claim for injunctive relief, because if plaintiff were suffering irreparable harm from the imposition of intermediate sanctions, it would have made an appeal in federal court in October of 2005 when the intermediate sanctions were upheld. Any delay by a plaintiff in seeking preliminary relief is a relevant factor when considering whether the plaintiff has met his burden to show irreparable harm. "[T]he failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." Tough Traveler, Ltd. v. Outbound Prods., 60 F.3d 964, 968 (2d Cir. 1995) (internal quotation marks and citation omitted); see also Newdow v. Bush, 355 F. Supp. 2d 265, 292 (D.D.C. 2005) ("An unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm."); see also Fund for Animals v. Frizzell, 530 F.2d 982, 987 (D.C. Cir. 1975) (plaintiffs had waited 44 days until after final regulations were issued although they had notice of a public comment period); Lisa Frank, Inc. v. Impact Int'l., 799 F. Supp. 980, 1001 (D. Ariz. 1992) (delay of several months excusable only where during that time there were: "1) approximately 358 requests for production of documents; 2) approximately 95 additional requests for production of documents; 3) approximately 46 interrogatories; 4) approximately 31 requests for admissions; 5) depositions of nine LFI and Stuart Hall employees in Arizona and Kansas City"); Lanvin, Inc. v. Colonia, Inc., 739 F. Supp. 182, 192 (S.D.N.Y.1990) (denying preliminary injunction after seven-month delay).

properly maintained intermediate sanctions against plaintiff.[5]

### III. Plaintiff Has Failed to Meet its Burden for Injunctive Relief on the Issue of Intermediate Sanctions.

For plaintiff to prevail on a motion for a preliminary injunction, it must demonstrate: (1) a substantial likelihood of success on the merits; (2) that it would suffer irreparable injury if the injunction is not granted; (3) that an injunction would not substantially injure other interested (non-moving) parties; and (4) that the public interest would be furthered by the injunction. CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 746 (D.C. Cir. 1995). In its PI and TRO motions, plaintiff asserted irreparable harm in the form of "certain destruction of the company" absent enjoinment of defendant's proposed termination of AHC's MA contract. Pl. PI. Mot. at 5. Plaintiff, however, made no assertion of harm, irreparable or otherwise, related to defendant's imposition of intermediate sanctions. Nor can plaintiff make such a showing. Pursuant to 42 C.F.R. § 422.752, defendant imposed intermediate sanctions on AHC on July 6, 2005. A.R. 2280-85. Those sanctions remained in effect until June of 2006, when defendant agreed to temporarily lift the intermediate sanctions as part of a settlement agreement, whereby plaintiff consummated a stock purchase agreement with HealthSpring, a well-known MAO with a proven track record, and HealthSpring took over management of the MAO. A.R. 46. Plaintiff informed defendant that its sale to HealthSpring would not go forward, and in November of 2006, as anticipated by the settlement agreement, defendant re-imposed the intermediate sanctions. A.R. 29. Plaintiff therefore operated for almost a year, from July of 2005 through

---

[5] Importantly, the Court found that plaintiff did not show a substantial likelihood of success in challenging the merits of the underlying deficiencies that had previously been found, and these deficiencies support the continuation of the intermediate sanctions.

June of 2006, and since November of 2006 while under intermediate sanctions.[6] Plaintiff has therefore failed to demonstrate irreparable harm stemming from defendant's imposition of intermediate sanctions, and is not entitled to injunctive relief on this issue, which it chose not even to mention in its TRO/PI papers.  Moreover, granting such preliminary relief (unlike relief regarding the effectuation of the termination itself) would significantly alter the status quo and is therefore subject to a much higher burden.  Veitch v. Danzig, 135 F. Supp. 2d 32, 35 (D.D.C. 2001) (finding that if requested relief "would alter, not preserve, the status quo . . . [a plaintiff] must meet a higher standard than were the injunction . . . sought merely prohibitory.") (citation omitted).[7]

Likewise, plaintiff has failed to establish the remaining three factors required for injunctive relief.  Given the express language in the statute and regulations, defendant is entitled to maintain sanctions against AHC until it is satisfied that the underlying deficiencies have been corrected.  42 U.S.C. § 1395w-27(g)(3)(C); 42 C.F.R. § 422.756(f)(3); 42 C.F.R. § 422.750.  As such, AHC has not shown a likelihood of success on the merits.  In addition, the public interest

---

[6] The same is not true with regard to the termination, which never went into effect.

[7] In this regard, the APA does not permit the Court to alter the status quo upon review of an agency decision.  Pursuant to 5 U.S.C. § 701, the scope of interim relief the Court may provide is limited.  "On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court . . . may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings."  Id.  Here, plaintiff's papers sought only the postponement of the effective date of the Administrator's November 30, 2006 decision; however, the Court's Order may be read to require defendant to lift sanctions that were imposed on August 3, 2005.  The statute permitting the Court to postpone the effective date of the agency action or preserve the status quo pending completion of review does not confer jurisdiction to alter the status quo or allow the Court to issue interim relief that dictates specific terms or conditions to a government agency.  See Salt Pond Associates v. U.S. Army Corps of Engineers, 815 F. Supp. 766 (D. Del. 1993).

weighs against AHC on this issue. Defendant must be allowed to regulate MAOs and protect the public from MAOs that are not performing up to standards. It is contrary to the public interest to allow AHC to market its program and to allow new beneficiaries to enroll in AHC's MA program when AHC has failed to correct the underlying deficiencies that caused defendant to implement intermediate sanctions in the first place.

**CONCLUSION**

For the reasons stated herein, the Court should clarify and/or reconsider its December 21, 2006 Order and deny plaintiff's motion for a preliminary injunction on the issue of defendant's imposition of intermediate sanctions on AHC.

Dated: December 22, 2006    Respectfully submitted,

                                      PETER D. KEISTER
                                      ASSISTANT ATTORNEY GENERAL
                                      JEFFREY TAYLOR
                                      UNITED STATES ATTORNEY
                                      SHEILA LIEBER
                                      DEPUTY DIRECTOR
                                      _____/s/_____
                                      HEATHER R. PHILLIPS
                                      Trial Attorney

OF COUNSEL:                          JAMES LUH
Carol J. Bennett, Deputy AGC         Trial Attorney
Daniel Wolfe, Attorney                U.S. Department of Justice
Health and Human Services           Civil Division/Federal Programs
Office of General Counsel             20 Massachusetts Ave., N.W., Room 7222
                                      Washington, DC  20001
                                      Ph:    (202) 616-0679
                                      Fax:   (202) 616-8470
                                      Email: heather.phillips@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICA'S HEALTH CHOICE MEDICAL PLANS, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, CENTERS FOR MEDICARE & MEDICAID SERVICES <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No.:  06-2064 (RWR) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

THIS MATTER having come before the Court on Defendant's Motion to Clarify and or Reconsider the Court's December 21, 2006 Order and Plaintiff's Opposition thereto, the Court clarifies and reconsiders its December 21, 2006 Order to read as follows:

The administrative record likely supports the agency Administrator's November 30, 2006 decision terminating plaintiff's Medicare Advantage contract as it existed prior to November 18, 2005; however, plaintiff is likely to succeed on its claim that on November 18, 2005, CMS and AHC entered into a new Medicare Advantage contract and that CMS has not followed required termination procedures to terminate that contract;

Plaintiff has shown that it will suffer irreparable harm if this Court were to deny its motion for a preliminary injunction;

Defendant has not shown that it will suffer significant harm if this Court were to grant the motion for a preliminary injunction; and

Plaintiff has failed to show that the entry of a preliminary injunction is in the public interest; however,

The balance of factors shows that Plaintiff is entitled to preliminary relief.

WHEREFORE, for good cause shown, it is on this _____ day of December, 2006,

ORDERED that Plaintiff's motion for a preliminary injunction be, and hereby is, granted;

ORDERED that, until April 15, 2007, or such later date as this Court may order, CMS and all those acting in concert with it shall take no action to effectuate the agency Administrator's November 30, 2006 decision terminating AHC from the Medicare Advantage Program.  Accordingly, until further order of this Court, CMS may make no statement, representation or disclosure, whether public or to any beneficiary, provider or other third-party, indicating that CMS will implement the November 30, 2006 termination decision;

Further ORDERED that the Court shall hold a status hearing on this matter on March 16, 2007, at 9:15 a.m.

**SO ORDERED.**

Dated: _____     _____