UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICA'S HEALTH CHOICE MEDICAL PLANS, INC., )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES DEPARTMENT OF HEALTH )<br>AND HUMAN SERVICES, CENTERS FOR )<br>MEDICARE & MEDICAID SERVICES )<br>      Defendant. )<br>) | Civil Action No.:  06-2064 (RWR) |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S EXPEDITED MOTION TO CLARIFY AND/OR RECONSIDER THE COURT'S DECEMBER 21, 2006 ORDER FOR PRELIMINARY INJUNCTION**

Justice requires the Court to reconsider its December 21, 2006 Order.  As plaintiff admits, its Prayer for Relief, "did not expressly ask for the removal of sanctions."  Plaintiff's Opposition ("Pl. Opp.") at 2.  Indeed, plaintiff did not in any sense challenge the imposition or continuation of the intermediate sanctions anywhere in its papers or its original proposed order on the motion for injunction, much less demonstrate its entitlement to relief from such sanctions.  Defendant therefore had no opportunity to address this matter.  Plaintiff likewise admits that it did not "separately demonstrate the irreparable harm that would arise from imposition of the marketing and enrollment sanctions."  Id. at 9.  The Court should therefore reconsider its decision granting injunctive relief to plaintiff on the issue of intermediate sanctions.

**I.      Legal Standard**

The Administrative Procedure Act does not permit judicial review of agency actions that are "committed to agency discretion by law."  5 U.S.C. § 701(a).  Pursuant to the governing statute, once intermediate sanctions – which run with the Medicare Advantage Organization ("MAO") itself and not with the MAO's contract – are imposed, they may be maintained "until

the Secretary is *satisfied* that the deficiency that is the basis for the determination has been corrected and is not likely to recur." 42 U.S.C. § 1395w-27(g)(3)(C) (emphasis added). The determination regarding whether to lift sanctions is committed to the discretion of the Secretary, arguably denying the Court jurisdiction over the agency's decision and/or authority to maintain intermediate sanctions against AHC. Webster v. Doe, 486 U.S. 592, 600 (noting that Congress specifically empowered CIA director to terminate an employee "whenever [he] shall '*deem* such termination necessary or advisable in the interests of the United States' (emphasis added), not simply when the dismissal *is* necessary or advisable to those interests.") (citation omitted); Lenox Hill Hosp. v. Shalala, 131 F. Supp. 2d 136, 141 (D.D.C. 2000) (finding that court lacked jurisdiction over HHS's decision not to grant filing extension where extension allowed for "good cause" because such determination committed to agency discretion by law). See also Trustees of Masonic Hall and Asylum Fund v. Leavitt, 2006 WL 1686405, *8 (June 7, 2006, N.D. N.Y.) (holding that statutory statement that payment may be withheld until Secretary "is satisfied" indicated "that Congress intended to invest in the Secretary unreviewable discretion as to whether to make a compliance determination.").

Even assuming the Court has jurisdiction over CMS's decision to maintain intermediate sanctions against AHC, plaintiff argues that defendant's motion for reconsideration should be adjudged under the standards governing motions to alter or amend judgment brought pursuant to Federal Rule of Civil Procedure 59(e). Pl. Opp. at 7-8. Not so. Rather, "Rule 54(b) governs reconsideration of orders that do not constitute final judgments in a case." Cobell v. Norton, 355 F. Supp. 2d 531, 538-39 (D.D.C. 2005); see also Moore v. Hartman, 332 F. Supp. 2d 252, 256 (D.D.C. 2004) (explaining that Rule 54(b) governs the disposition of requests for reconsideration

of interlocutory orders); Campbell v. United States Dep't of Justice, 231 F. Supp. 2d 1, 6 n. 8 (D.D.C. 2002) (Rule 54(b) "addresses interlocutory judgments").

In pertinent part Rule 54(b) provides:

> In the absence of such determination and direction [of final judgment], any order or other form of decision, however designated, which adjudicates fewer than all the claims . . . shall not terminate the action as to any of the claims or parties, and the order or other form of decision *is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of the parties*.

FRCP 54(b) (emphasis added).

"Importantly, the standard for reconsideration of interlocutory orders under Rule 54(b) is distinct from the standard applicable to motions for reconsideration of final judgments." Cobell, 355 F. Supp. at 539; see also Judicial Watch v. Dep't of Army, – F. Supp. 2d – , 2006 WL 3600329, *12 (Dec. 12, 2006, D.D.C.). This Court has held that Rule 54(b) reconsideration may be granted "as justice requires." Judicial Watch, – F. Supp. 2d – , 2006 WL 3600329, *12 (Dec. 12, 2006, D.D.C.); Campbell, 231 F. Supp. 2d at 7 (quoting Childers v. Slater, 197 F.R.D. 185, 190) (D.D.C. 2000); M.K. v. Tenet, 196 F. Supp. 2d 8, 12 (D.D.C. 2001).

"As justice requires" indicates concrete consideration of whether the Court: (1) has patently misunderstood a party; (2) has made a decision outside the adversarial issues presented to the Court by the parties; (3) has made an error not of reasoning, but of apprehension; or (4) where a controlling or significant change in the law or facts has occurred since the submission of the issue to the Court. Judicial Watch, – F. Supp. 2d – , 2006 WL 3600329, *12 (Dec. 12, 2006, D.D.C.) (citation omitted). Justice requires the Court to reconsider its December 21, 2006 Order as it deals with an issue never previously presented to the Court by the parties. Plaintiff failed to

request that intermediate sanctions be lifted. Moreover, plaintiff has made no showing whatsoever that it is entitled to preliminary relief on the issue of intermediate sanctions.[1]

## II. Plaintiff Has Failed to Demonstrate Entitlement to Injunctive Relief From Intermediate Sanctions.

Plaintiff admits that it failed to demonstrate irreparable harm from intermediate sanctions in its earlier pleadings before the Court. Even in its current pleading, plaintiff provides no evidence of irreparable harm. Instead, plaintiff argues that it need not establish irreparable harm stemming from the imposition of intermediate sanctions because "if AHC's 2006/2007 contract were terminated, there would be a host of concomitant implications, in addition to marketing and enrollment being precluded . . . [and] there is no requirement for AHC to separately demonstrate [] each of these implications independently." Pl. Opp. at 9. This statement makes no sense. The Court's ruling on preliminary injunction has enjoined CMS from terminating plaintiff's Medicare Advantage ("MA") contract pursuant to the November 30, 2006 decision, thus any harm that could stem from termination of the contract is <u>irrelevant</u> to the instant analysis. The crux of the issue now before the Court is whether plaintiff will suffer irreparable harm if the intermediate sanctions are not lifted. The answer to this question is no.

First, plaintiff's failure to even argue irreparable harm stemming from these actions

---

[1] Given plaintiff's failure to raise the issue of intermediate sanctions and consequently the fact that the issue was therefore never briefed to the Court, even under the more stringent standards governing motions under Fed. R. Civ. P. 59(e), reconsideration would be warranted to avoid "manifest injustice." <u>Anyanwutaku v. Moore</u>, 151 F.3d 1053, 1057 (D.C. Cir. 1998). FRCP 65(a) provides that "[n]o preliminary injunction shall be issued without notice to the adverse party." The Court's entry of the December 21, 2006 Order granting injunctive relief against intermediate sanctions notwithstanding plaintiff's failure to raise and brief the issue and the Court's not having mentioned this relief in the oral ruling which it had asked the parties to include in a proposed order, constituted entry of a preliminary injunction without notice to defendant.

evidences most clearly its recognition that it will not suffer irreparable harm. Plaintiff likely understands that it cannot argue irreparable harm stemming from intermediate sanctions because such sanctions were imposed in August of 2005, yet plaintiff subsequently continued to operate and 17 months later still exists to fight this battle. Plaintiff did not, at the time they were imposed, request an injunction against the imposition of intermediate sanctions, and indeed, has never formally requested such relief, instead simply inserting it into their proposed order without ever having argued or briefed the issue to the Court. Plaintiff's delay fatally undermines its current request for injunctive relief. Newdow v. Bush, 355 F. Supp. 2d 265, 292 (D.D.C. 2005) ("An unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm.").

Even now, rather than arguing that it will suffer irreparable harm from the continuation of intermediate sanctions, the bulk of plaintiff's opposition addresses the merits of its contention that the issue of intermediate sanctions is inextricably linked to the issue of contract termination, and that the Court's finding that likely a "new" contract was entered into on November 22, 2005, also dictates enjoining the continuation of intermediate sanctions. Pl. Opp. at 5-6. This is not the case.

For purposes of analysis under preliminary injunction standards, defendant disputes that plaintiff has a likelihood of success on the merits on this issue. Although the intermediate sanctions were imposed pursuant to 42 C.F.R. § 422.752(b) at the same time that plaintiff was notified on July 6, 2005, that its MA contract was being terminated, the statute and regulations expressly provide for distinct processes for the review and lifting of intermediate sanctions as opposed to contract termination. In point of fact, as evidenced by CMS's August 3, 2005 letter

(revising its July 6, 2005 letter, and immediately imposing intermediate sanctions), CMS exercised its sanction authority <u>based on AHC's underlying deficiencies</u>, which, though concurrently supporting a termination action, was <u>not</u> solely adjunct to its termination decision. A.R. 2338-39 (noting imposition of immediate sanctions pursuant to 42 C.F.R. § 422.756(d)(2), and that sanctions "will remain in effect until the deficiencies that justified intermediate sanctions have been corrected and are not likely to recur.").

Of paramount importance to the Court's analysis is the express language of the statute and regulations that govern the imposition of intermediate sanctions on MAOs. The statute states that intermediate sanctions may be imposed "*until the Secretary is satisfied that the deficiency that is the basis for the determination has been corrected and is not likely to recur.*" 42 U.S.C. § 1395w-27(g)(3)(c) (emphasis added); <u>see also</u> 42 C.F.R. § 422.752. Echoing the statute, the regulations provide that the "sanction remains in effect until CMS notifies the MA organization that CMS is satisfied that the basis for imposing the sanction has been corrected and is not likely to recur." 42 C.F.R. § 422.756(f)(3); <u>see also</u> 42 C.F.R. § 422.750 ("the enrollment, payment, and marketing sanctions continue in effect until CMS is satisfied that the deficiency on which the determination was based has been corrected and is not likely to recur"). By their express statutory and regulatory terms, those sanctions are not directly linked to a particular "contract" but are applied to the MAO itself.

Plaintiff does not contend that its existence as an MAO has changed or ended, nor, and most vitally, has CMS ever made any determination that each previously identified deficiency "has been corrected and is not likely to recur," <u>id.</u>, nor that it is now "satisfied" that AHC will perform properly. Instead, CMS believes that AHC <u>still</u> has serious deficiencies warranting the

6

imposition of intermediate sanctions, and continued intermediate sanctions are therefore proper. In short, under the express language of the statute and regulations, intermediate sanctions imposed by CMS remain in place until the agency is satisfied that deficiencies have been corrected, regardless of whether there is a contract renewal, or as AHC contends, a "new" contract.

Plaintiff additionally argues that CMS may impose intermediate sanctions under 42 C.F.R. 422.752(b) only as an "adjunct" to a termination action. Ignoring not only the express statutory language of 42 U.S.C. § 1395w-27(g), but CMS's longstanding interpretation of the statute, plaintiff, as demonstrated below, is simply wrong. *See Establishment of the Medicare+Choice Program*, 63 FR 34968, 35031 -35032 (June 26, 1998).

At 42 U.S.C. §1395w-27 (g), Congress provided the Secretary with two distinct "channels" by which to impose intermediate sanctions; each channel is based upon a distinct set of deficiencies, and each offers a different set of available sanctions. The channels do not run concurrently, and, contrary to plaintiff's contention, are not simply divided into (a) "independent sanctions" and (b) "sanctions adjunct to termination." Pl. Opp. at 5-6. Plaintiff is right that 42 U.S.C. 1395w-27(g)(1), the "first channel," sets forth a set of deficiency determinations, by which the Secretary can impose any of several remedies, including intermediate sanction, as described at 42 U.S.C. §1395w-27(g)(2). This first channel is irrelevant here, for the Secretary did not, as plaintiff notes, make a determination in this action under 42 U.S.C. § 1395w-27(g)(1). Wholly misplaced, however, is plaintiff's contention that intermediate sanctions levied under 42 U.S.C. § 1395w-27(g)(3) somehow exist only as an "adjunct" to a termination action.

Here, the Secretary (acting through CMS) imposed intermediate sanctions pursuant to the

"second channel" at 42 U.S.C. § 1395w-27(g)(3), and its regulatory counterpart at 42 C.F.R.§ 422.752(b). This ground states that sanctions may be imposed if the Secretary makes a "determination under subsection (c)(2) of this section the basis of which is not described in paragraph (1)." Critically, that determination under subsection (c)(2) relates not to the decision to terminate itself, but rather the determination that there exists the underlying deficiency (or, as was the case here, deficiencies).

Consistent with this, CMS's longstanding interpretation of the Medicare Act, entitled to deference pursuant to Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), is expressed in the following excerpt from the Federal Register.

> The BBA [Balanced Budget Act of 1997 (BBA) (Public Law 105-33), enacted August 5, 1997] also contains additional sanction authority . . . . Under this new authority (. . . in section 1857(g)(3) for the M+C program), intermediate sanctions and civil money penalties can be imposed on the same grounds upon which a contract could be terminated. . . . Under the authority in section 1857(g)(3) to impose sanctions where the grounds in section 1857(c)(2) exist, intermediate sanctions can be imposed for any of the violations identified in §422.510(a), and we so provide in §422.752(b).

*Medicare Program; Establishment of the Medicare+Choice Program*, 63 FR 34968, 35031-35032 (June 26, 1998). Later, CMS specifically stated that "[s]ection 1857(g)(3) of the Act provides us with the authority to impose intermediate sanctions, . . . on M+C organizations for the same reasons for which we can terminate an M+C organization's contract." *Medicare Program; Modifications to Managed Care Rules,* 68 FR 50840, 50847 (August 22, 2003). Here, CMS found deficiencies based on 42 U.S.C. § 1395w-27(c)(2), which deficiency determinations not only have never been overruled on the merits, but which this Court itself – as noted in the Court's oral ruling on plaintiff's motion for preliminary injunction – is inclined to believe did

exist and continue to persist.

Plaintiff also contends that its so-called "new" contract calls for it to enroll members, ergo, intermediate sanctions cannot be in place. Pl. Opp. at 3. Nonsense. If that were the case, defendant could never impose intermediate sanctions (even though the statute and regulations expressly provide for the imposition of such sanctions for non-performing MAOs) because an MAO could then argue that its contract's provisions prevent such sanctions. This was not the intent of Congress in enacting the provision providing for sanctions, nor was it the intent of HHS in enacting the implementing regulations for such sanctions to evaporate merely because a contract is renewed or replaced with one containing technical revisions. Instead, the regulations make clear that the sanctions run with the MAO, not the MA contract, and likewise expressly provide that any such intermediate sanctions remain in place until the MAO has corrected the underlying deficiencies.

In this vein, not only would it not be in the public's interest to preclude the agency from ensuring that MAOs are complying with MA program requirements and providing good service to beneficiaries, but it would be expressly counter to the public's interest. Obviously, while an MAO remains in good standing it is expected to enroll new members. But where, as here, CMS has found that intermediate sanctions are warranted, CMS may direct that the MAO discontinue enrollment of new members. AHC has failed to correct its deficiencies, and CMS has properly maintained intermediate sanctions against AHC, including prohibiting AHC from enrolling new members.

Importantly, on a motion for preliminary injunction, plaintiff must establish each and every one of the following: (1) a substantial likelihood of success on the merits; (2) that it would

suffer irreparable injury if the injunction is not granted; (3) that an injunction would not substantially injure other interested (non-moving) parties; and (4) that the public interest would be furthered by the injunction.  CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 746 (D.C. Cir. 1995).  Plaintiff has not even addressed the issue of irreparable harm stemming from the imposition of intermediate sanctions, and therefore plaintiff's request for a preliminary injunction on the issue of intermediate sanctions must fail.

### III.     The Lifting of Intermediate Sanctions Changes the Status Quo and Plaintiff's Request for Injunctive Relief is Therefore Subject to a Higher Burden.

The Court's December 21, 1006 Order requiring defendant to lift intermediate sanctions against plaintiff alters the *status quo* rather than maintaining it, and imposes additional burdens on defendant.  A plaintiff must meet a higher standard to obtain a preliminary injunction that alters the status quo.  Leboeuf, Lamb, Greene & McRae, LLP v. Abraham, 180 F. Supp. 2d 65, 71 (D.D.C. 2001).  When a party seeks an injunction to reverse policies that are already in place, "the moving party must meet a higher standard than in the ordinary case by showing 'clearly' that he or she is entitled to relief or that 'extreme or very serious damage' will result from the denial of the injunction."  Columbia Hosp. for Women Found. v. Bank of Tokyo-Mitsubishi, Ltd., 15 F. Supp. 2d 1, 4 (D.D.C. 1997) (citation omitted).  Plaintiff has failed to meet its burden for any preliminary injunction against continuation of intermediate sanctions, much less the higher standard required for a preliminary injunction that alters the status quo.  In its response to defendant's argument on this point, plaintiff asserts merely that "the Court had discretion to fashion such relief, whether simply to maintain the status quo, or to mandate certain action."  Pl. Opp. at 10.  This misses the point.  Certainly the Court has discretion to fashion equitable remedies.  Plaintiff, however, must first establish its entitlement to injunctive relief.  This, it has

failed to do.

## CONCLUSION

For the reasons stated herein, the Court should clarify and/or reconsider its December 21, 2006 Order and deny plaintiff's motion for a preliminary injunction on the issue of defendant's imposition of intermediate sanctions on AHC.

Dated: January 10, 2006                    Respectfully submitted,

                                           PETER D. KEISLER
                                           ASSISTANT ATTORNEY GENERAL
                                           JEFFREY TAYLOR
                                           UNITED STATES ATTORNEY
                                           SHEILA LIEBER
                                           DEPUTY DIRECTOR


                                           _____/s/_____
                                           HEATHER R. PHILLIPS
                                           Trial Attorney
OF COUNSEL:                                JAMES LUH
Carol J. Bennett, Deputy AGC               Trial Attorney
Daniel Wolfe, Attorney                     U.S. Department of Justice
Howard Cohen, Attorney                     Civil Division/Federal Programs
Health and Human Services                  20 Massachusetts Ave., N.W., Room 7222
Office of General Counsel                  Washington, DC  20001
                                           Ph:    (202) 616-0679
                                           Fax:   (202) 616-8470
                                           Email: heather.phillips@usdoj.gov